UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND BEND DIVISION

| | | |
|---|---|---|
| JOHN PETRASSI, Individually and d/b/a HOMETOWN MOTORS, | ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:12-CV-119 RLM |
| | ) | |
| OFFICER JAMES STAHL; LAKE COUNTY SHERIFF'S DEPARTMENT; JOHN BUNCICH, as SHERIFF OF LAKE COUNTY, INDIANA; and LAKE COUNTY, INDIANA, | ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

John Petrassi had a used car business he called Hometown Motors. On January 26, 2012, Detective James Stahl of the Lake County Sheriff's Department, with fellow officers, took 79 automobile titles from Hometown Motors. Detective Stahl returned on February 1 and orchestrated the warrantless seizure of 54 vehicles from the Hometown Motors lot. Mr. Petrassi sues Officer Stahl, the Lake County sheriff, and Lake County, Indiana. The defendants have moved for summary judgment. Because a jury could find for Mr. Petrassi on his federal claims (though not on his state law claims), the court denies the summary judgment motions in part. Because the court finds genuine issues of material fact that make summary judgment on all issues inappropriate, *see* Fed. R. Civ. P. 56(a), this opinion omits many factual contentions.

As always on summary judgment motions, judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. <u>Garofalo v. Village of Hazel Crest</u>, 754 F.3d 428, 430 (7th Cir. 2014). At the summary judgment stage, the court doesn't decide the truth, but rather asks only if the non-movant could win at trial.

A.

Both defendants (the official capacity claim against the sheriff is the same as the claim against the county) are right that the state law claims can't proceed because Mr. Petrassi didn't comply with the Indiana Tort Claims Act. Mr. Petrassi filed this suit 31 days after he filed his notice of tort claim. Indiana law provides that to sue a municipal entity or officer, the plaintiff must file a tort claim with the municipality, which then has 90 days to approve or reject the claim. Lake County didn't get the 90 days the statute gives it. Mr. Petrassi, whose cars were being kept from him, says he had to act before 90 days expired, but the existence of a good reason for quick action by the plaintiff doesn't eliminate the 90 day decision period the Tort Claims Act provides municipalities. Mr. Petrassi cites cases in which municipalities were held to have effectively denied a tort claim without acting officially, but none of those cases involved a implied denial after only 31 days. <i>See</i> <u>Daugherty v. Dearborn County</u>, 827 N.E.2d 34 (Ind. Ct. App. 2005) (addressing adequacy of notice of claim given 253 days after injury); <u>City of Tipton</u>

v. Baxter, 593 N.E.2d 1280 (Ind. Ct. App. 1992) (discussing substantial compliance when plaintiff missed 180-day deadline for giving notice of claim).

Mr. Petrassi argues that he had to act quickly because the county was holding his vehicles, demanding at various times money and/or a release from liability. But nothing in Indiana law says the municipality is entitled to 90 days unless the claimant has a good reason for allowing only 30.

Both defendants are entitled to judgment on the state law claims.

## B.

Detective Stahl seeks judgment on the federal claims against him because (a) the seizure was permissible under Indiana statutes and the "closely regulated industry" exception to the Fourth Amendment's warrant requirement; (b) the seizure was permissible under the "caretaking function" exception to the Fourth Amendment's warrant requirement; (c) the cars weren't taken without due process of law because Mr. Petrassi could have gotten the vehicles back by presenting ownership documents to the sheriff's department and because Mr. Petrassi can't show an ownership interest in the vehicles; and (d) the qualified immunity doctrine shields Detective Stahl from liability.

The court doesn't find the support Detective Stahl perceives in Indiana law. Detective Stahl points to Indiana Code § 9-22-3-23, 24 —

> Sec. 23. A record required to be maintained under this chapter is subject to inspection by a police officer during normal business

hours. In addition to the inspections authorized under section 24 of this chapter, an inspection under this section may include an examination of the premises of the licensee's established place of business for the purpose of determining the accuracy of the required records.

Sec. 24. The secretary of state, a police officer, or an agent of the secretary of state or a police officer may enter upon the premises of a disposal facility, insurance company, or other business dealing in salvage vehicles during normal business hours to inspect a motor vehicle, semitrailer, recreational vehicle, major component part, records, certificate of title, and other ownership documents to determine compliance with this chapter.

— for impoundment of the certificates, and Indiana Code § 9-22-1-5 –

When an officer discovers a vehicle in the possession of a person other than the owner of the vehicle and the person cannot establish the right to possession of the vehicle, the vehicle shall be taken to and stored in a suitable place determined by the officer.

– as support for the impoundment of the vehicles.

None of those sections support the seizures. The statutes Detective Stahl cites for seizure of the certificates only authorize on-premises inspections. As to the seizure of the vehicles, § 1(3) of Indiana Code 9-22-1 provides that "[t]his chapter does not apply to [a] vehicle located on a vehicle sale lot." Even accepting Detective Stahl's position that used car lots constitute a closed regulated industry to which the Fourth Amendment applies with less rigor, it doesn't appear that Indiana law specifically allows the warrantless seizure of cars from a used car lot.

But, Detective Stahl argues, Mr. Petrassi was running Hometown Motors as a salvage yard rather than as a used car lot. But even if Hometown Motors was

violating the requirements of its license — and a state agency revoked its license before another week passed — Hometown Motors was a licensed used car dealer.

The community caretaking function exception to the Fourth Amendment's warrant requirement isn't well-defined, but lengthy discussion isn't needed for purposes of Mr. Petrassi's case. Our court of appeals has limited the exception to warrantless searches of motor vehicles. Sutterfield v. City of Milwaukee, 751 F.3d 542, 557 (7th Cir. 2014); United States v. Pichany, 687 F.2d 204, 207-209 (7th Cir. 1982). Mr. Petrassi complains about the seizure of the vehicles, not the searches.

Detective Stahl also claims that exigent circumstances supported the warrantless seizure. That claim finds no support in the record; there is no indication that there wasn't time to procure a warrant.

Mr. Petrassi claims the continued detention of the vehicles amounts to a denial of his property without due process of law. A variety of fact issues seem to surround this argument: Detective Stahl says Mr. Petrassi had no ownership in the vehicles because he couldn't demonstrate that he owned them, but the record also indicates that three days before the taking the vehicles, Detective Stahl and his colleagues had seized 79 automobile titles from Hometown Motors. Detective Stahl says Mr. Petrassi could simply have shown proof of ownership and retrieved them within a week, but the record suggests Mr. Petrassi also would have had to

pay a towing fee for each of the 54 vehicles, and that the sheriff's department was also notifying others in the chain of title that they could come pick up the vehicles.

C.

Had Detective Stahl prevailed on his arguments against liability on the federal claims, the sheriff's department would have been entitled to judgment, as well, because without a constitutional tort by a person within the sheriff's department, Mr. Petrassi would have no standing to challenge even a policy or practice that might allow constitutional deprivations. Since Detective Stahl didn't succeed on his motion, the inquiry turns to the sheriff's department.

A municipal employer or supervisor of a constitutional tortfeasor isn't liable unless the constitutional tort resulted from the employer's or supervisor's official policy or practice. Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 690 n.55 (1978). The sheriff contends Mr. Petrassi can't come forth with evidence of such a practice or policy. Indeed, the sheriff notes that when Mr. Petrassi was asked at his deposition about policies, he answered that he didn't believe the sheriff had a policy authorizing Detective Stahl to violate the law.

Mr. Petrassi's deposition testimony isn't a binding judicial admission that entitles anyone to judgment as a matter of law. No law requires a party to serve as a living index to his attorney's case file. More significant to today's summary judgment decision is this deposition testimony by Detective Stahl:

Q      At all times when you had Mr. Petrassi's vehicles towed, were you operating pursuant to the policies and procedures of the Lake County Sheriff's Department?

A      Yes.

Doc. 67, Exh. 1, p. 61. Detective Stahl's answer might have been wrong. He might have misunderstood the policy; he might have believed there was a policy when none existed. But those are questions for the jury. The testimony of Detective Stahl, an employee of the sheriff's department, that he acted pursuant to an official policy creates a genuine issue of material fact that precludes summary judgment.

The sheriff points to the lack of evidence that he failed to train or supervise officers, to evidence that the sheriff didn't personally authorize the seizures of the certificates or vehicles, and to evidence that the seizures didn't comply with any policy of the sheriff's department. But summary judgment isn't an occasion to weigh evidence. <u>Miller v. Gonzalez</u>, 761 F.3d 822, 827 (7th Cir. 2014). Detective Stahl was in a position to know departmental policy, and he testified that he acted pursuant to the sheriff's policy. Any other evidence simply creates a fact issue for trial.

## D.

Detective Stahl's claim of qualified immunity — a claim not available to the sheriff — remains. Qualified immunity protects government employees from suit for constitutional torts if a reasonable government official wouldn't have known

of the right asserted. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court faced with a claim of qualified immunity must decide whether the facts make out a constitutional violation and, if so, whether that constitutional right was clearly established at the time of the violation. Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014). If reasonable minds can differ about the permissibility of the actions taken, qualified immunity is appropriate. Abbott v. Sangamon County, 705 F.3d 706, 723 (7th Cir. 2013). State law can play a part in deciding whether a right was clearly established. Gonzalez v. Village of West Milwaukee, 671 F.3d 649, 659-660 (7th Cir. 2012) (whether state constitutional right to bear arms trumped state disorderly conduct statute).

The Fourth Amendment right to be free from an illegal seizure is well-established, but the qualified immunity claim ordinarily requires Mr. Petrassi's claim to be more narrowly defined, *see, e.g.*, White v. Stanley, 745 F.3d 237, 241 (7th Cir. 2014); Volkman v. Riker, 736 F.3d 1084, 1090 (7th Cir. 2013), but as an alleged violation moves further from what is arguably constitutional it becomes more difficult to avoid generalities. The state law governing the official's conduct can be pertinent to the federal qualified immunity inquiry. Sutterfield v. Milwaukee, 751 F.3d at 577-578.

The parties' briefs touch only lightly on Officer Stahl's qualified immunity claim. Officer Stahl's argument is found in two paragraphs, and Mr. Petrassi's response is in one. The brevity of the parties' arguments complicates resolution

of the qualified immunity argument; both sides seem to rely on the rest of their arguments to support their positions. Having already discussed those arguments, the court can identify no reason why a reasonable government official could have been at all hazy about the permissibility of a warrantless seizure of vehicles from a used car lot. On this record, Officer Stahl isn't entitled to qualified immunity.

Detective Stahl argues that he relied on state statutes — perhaps mistakenly, though he doesn't concede error — in good faith when he seized the certificates and vehicles. Evidence that he received contrary advice from a deputy prosecuting attorney, Mr. Petrassi's own attorney (who had the statutes in hand), and a field investigator for the Indiana Secretary of State's Auto Dealer Services Section, and that Detective Stahl told Mr. Petrassi a few days earlier that the detective was going to make "the thunder come down on" Mr. Petrassi, is enough to create a fact issue on good faith. But it doesn't appear that good faith is a material fact because the qualified immunity inquiry is objective, rather than directed into the official's mind. Wilson v. Layne, 526 U.S. 603, 614 (1999).

Pearson v. Callahan, 555 U.S. 223 (2009), which Detective Stahl cited at the summary judgment hearing, doesn't support a different outcome. The police officers in Pearson claimed qualified immunity because the circuits were split on the adequacy of "consent-once-removed" (when an informant has been invited into the home and saw contraband in plain view); because the claimed constitutional right wasn't clearly defined in 2002, the Supreme Court held that officers were

entitled to qualified immunity. Today's case presents neither consent nor disagreement between courts. Detective Stahl is alleged to have seized and removed 79 certificates of title and 54 motor vehicles from a used car lot with neither a warrant nor any other legal authority. Nothing in the <u>Pearson</u> opinion offers protection from suit based on those allegations.

Detective Stahl isn't entitled to qualified immunity on either Mr. Petrassi's illegal seizure claim or his due process claim.

E.

For these reasons, the court GRANTS the defendants' summary judgment motions [docs. 60 and 62] with respect to the plaintiff's state law claims, and DENIES the motions with respect to the plaintiff's claims under 42 U.S.C. § 1983. A scheduling conference to set a trial date will be set after inquiring into counsel's availability for the conference.

ENTERED:   January 15, 2015

  /s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Judge
United States District Court